**NORTH CENTRAL JOBBERS,**
**Northwood, North Dakota,**
**Plaintiff and Appellee,**

v.

**Thomas SNORTLAND, Sharon, North Dakota, Defendant and Appellant.**

**Civ. No. 10281.**

Supreme Court of North Dakota.

Jan. 27, 1983.

Gene C. Grindeland and Thomas R. Moe, Mayville, for plaintiff and appellee; argued by Thomas R. Moe, Mayville.

Wayne O. Solberg, of Solberg, Stewart, Boulger & Miller, Fargo, for defendant and appellant.

VANDE WALLE, Justice.

Thomas Snortland appealed from a judgment of the district court which required him to pay to North Central Jobbers $20,-584.91 plus interest pursuant to the provisions of an oral contract between the parties. We affirm.

North Central Jobbers is a North Dakota corporation engaged in the business of buying, selling, and distributing merchandise. Thomas Snortland is a farmer and business-man. In 1977, the parties entered into an oral agreement whereby North Central Jobbers would use Snortland's two trucks and two trailers in its wholesale distribution business. In return, Snortland would receive the balance of the revenue produced by each truck less the expenses incurred.

The district court found that the verbal agreement had substantially the following terms:

"a.) The title to the trucks and trailers would be transferred to the corporation.

"b.) The corporation would use the trucks in distributing merchandise, usually attempting to have cargo in both going and returning.

"c.) The corporation would arrange for drivers and all trips.

"d.) The corporation would pay all expenses such as insurance, fuel, salaries, repairs and other expenses and handle all accounting work.

"e.) The expenses of each truck unit would be offset from the revenue produced and the balance would be paid to the former owner.

"f.) The corporation would pay the employers' share of Social Security contributions for the truck drivers and all unemployment insurance premiums without reimbursement from the Defendant.

"g.) The corporation would charge a flat fee for interest if the amount owing Defendant was less than $2,000.00. If over $2,000.00, Defendant would get such fee.

"h.) Shop rent and office overhead were also charged as expenses against the truck's revenue.

"i.) The revenue of each truck was the usual tariff charged in comparable hauling."

Snortland transferred two trucks and two trailers to North Central Jobbers in the fall of 1977. Snortland subsequently purchased stock from North Central Jobbers for $54,-000 and lent the corporation $30,000 for operating capital. Approximately one year after the transfer of the trucks the parties had a disagreement over corporate policy.

This disagreement eventually resulted in Snortland's getting his money back for the stock purchased and the repayment of the amount of his loan to the corporation. Subsequently, Snortland's trucks and trailers were returned to him and the contract was terminated.

Following the return of the trucks, North Central Jobbers sent Snortland a statement indicating that Snortland owed North Central Jobbers $20,584.91, the amount by which operating and maintenance expenses exceeded the revenue produced by the two trucks.[1] Snortland refused to pay and North Central Jobbers commenced this action. The case was tried to the court and the testimony concerning the transaction was provided mainly by Lloyd Thorsgaard, the principal stockholder and chief executive officer of North Central Jobbers, and by Snortland. At the close of the trial the court found that a valid oral contract was formed between the parties and that pursuant to the terms of that contract Snortland was obligated to pay to North Central Jobbers the sum of $20,584.91 plus interest for expenses incurred by North Central Jobbers in the operation of Snortland's trucks. Judgment was entered accordingly. From this judgment Snortland appealed.

Snortland states the pertinent issues on appeal as follows:

"1. Did the trial court err in finding that there was a contract between the parties and in supplying the terms thereof?

"2. Did the trial court err in its conclusion that the contract, as determined by the court, had a lawful objective and was not void and unenforceable?"

The findings of the trial court that a contract was formed between the parties and that the terms of the contract were essentially as set forth previously in this opinion are findings of fact governed by Rule 52(a) of the North Dakota Rules of Civil Procedure. See *Tallackson Potato Co., Inc. v. MTK Potato Co.,* 278 N.W.2d 417 (N.D.1979). Findings of fact are not to be set aside unless clearly erroneous, and due regard is to be given to the opportunity of the trial court to judge the credibility of the witnesses. Rule 52(a), N.D.R.Civ.P. We have held that a finding of fact is clearly erroneous "when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *Anderson v. Mooney,* 279 N.W.2d 423, 426 (N.D.1979).

Snortland contends that no "meeting of the minds" occurred between the parties. Snortland apparently claims that he was either unaware of or mistaken as to the terms of the contract and therefore there was no mutual consent and the contract cannot be enforced. As authority for his contention Snortland cites Sections 9–03–01, 9–03–03, and 9–03–16 of the North Dakota Century Code.[2]

The phrase "meeting of the minds" was criticized by this court in *Amann v. Frederick,* 257 N.W.2d 436, 439 (N.D.1977):

---

1. At trial North Central Jobbers introduced its accounting records showing all expenses and income for each truck for the period from December 1977 to June 30, 1979. Snortland produced no evidence disputing these records and does not contest the amount of the expenses in his appeal. The trial court found that the major reason for the trucks' losing money was that one truck was in for repairs and axle changes for a long period of time and the other truck was involved in an accident which limited its time on the road.

2. These statutes provide:

"9–03–01. *Requisites of consent.*—The consent of the parties to a contract must be:
"1. Free;

"2. Mutual; and
"3. Communicated by each to the other."
"9–03–03. *What renders apparent consent not free.*—An apparent consent is not real or free when obtained through:
"1. Duress;
"2. Menace;
"3. Fraud;
"4. Undue influence; or
"5. Mistake."
"9–03–16. *'Mutual consent' defined.* —Consent is not mutual unless the parties all agree upon the same thing in the same sense. In certain cases defined in chapter 9–07, they are to be deemed so to agree without regard to the fact."

"The invocation of the shorthand expression 'meeting of the minds' is more misleading than helpful in deciding contract issues. Mutual assent to a contract is indeed required, but that assent must be evidenced in some way, and if the evidence is clear enough, the contract will be binding, regardless of mental reservations or misunderstandings of one or both parties, in the absence of fraud or other recognized ground for setting aside the contract. It is the words of the contract and the manifestations of assent which govern, not the secret intentions of the parties. . . .

.        .        .        .        .

"Professor Williston sums it all up by saying that the term 'meeting of the minds' is a 'familiar cliche, still reechoing in judicial dicta,' and that it is a nineteenth-century expression which seems to be contrary to the rule 'long ago settled that secret intent was immaterial, only overt acts being considered in the determination of such mutual assent' as the law requires. *Williston on Contracts,* 3d Ed., § 22."

See also *Anderson v. Mooney, supra,* 279 N.W.2d at 426, n. 1.

■ We are satisfied that the circumstances indicate a sufficient objective manifestation of consent for the trial court to find that a contract was formed between North Central Jobbers and Snortland. Following the discussions during which the oral agreement concerning the use of Snortland's trucks was reached, Snortland transferred title and physical possession of the trucks to North Central Jobbers. The trucks traveled over 130,000 miles while remaining in the possession of North Central Jobbers for more than a year. During much of this period, Snortland was involved in North Central Jobbers' business as a stockholder and creditor of the corporation. He visited the corporate headquarters and had access to the corporate books and to the trucks. Snortland is not a novice in the business world. He has considerable farming interests and other business investments.

Upon review of the record, including the testimony at trial, we conclude that the trial court did not clearly err when it found a contract existed between North Central Jobbers and Snortland.

Snortland contends, however, that even if a contract between the parties did exist, the trial court erred in finding the terms of the oral agreement.[3] Snortland does not contest the amount of expenses alleged, but argues that no agreement was reached to provide for the reimbursement or compensation of North Central Jobbers for losses sustained in the operation and maintenance of Snortland's trucks. Snortland asserts that the trial court improperly engaged in speculation by supplying terms to the contract not contemplated by the parties. Snortland urges we conclude that he was entitled to the net revenue, if any, from the use of the trucks but was not responsible for any losses.

The terms of the oral contract found by the trial court are findings of fact which will not be set aside unless clearly erroneous. Rule 52(a), N.D.R.Civ.P. Lloyd Thorsgaard testified that the agreement entered into for the use of Snortland's trucks was substantially the same type of agreement entered into by North Central Jobbers with a number of other truck owners. Included in Thorsgaard's testimony were all the terms the court found to be part of the oral contract. Snortland submitted no evidence to show a different oral contract existed. Due regard must be given to the opportunity of the trial court to judge the credibility of the witnesses. Rule 52(a), N.D.R.Civ.P.

■ The trial court found part of the oral contract provided:

"d.) The corporation would pay all expenses such as insurance, fuel, salaries, repairs and other expenses and handle all accounting work.

---

3. Although Snortland asserted the statute-of-frauds defense at the trial-court level, it is not raised as an issue on appeal.

"e.) The expenses of each truck unit would be offset from the revenue produced and the balance would be paid to the former truck owner."

Snortland argues these provisions cannot be construed to impose liability upon the truck owner when the expenses of each truck exceed the amount of revenue produced. However, because the contract manifests no contrary intention, these provisions must be implied as necessary to make the contract reasonable. Sec. 9–07–20, N.D.C.C. To hold otherwise would place North Central Jobbers in the position of an insurer, guaranteeing that Snortland would suffer no loss from the business transaction. Such a position is untenable. Every business transaction necessarily involves some risk that the venture will prove unprofitable. Pursuant to the terms of the oral contract in the instant case, Snortland is obligated to pay to North Central Jobbers the amount by which the maintenance and operating expenses of the trucks exceeded the amount of revenue produced.

We have carefully reviewed the record and conclude that the trial court did not make clearly erroneous findings as to the terms of the oral contract.

Citing Section 9–04–03, N.D.C.C.,[4] Snortland's final contention is that the sole object of the contract was to evade Interstate Commerce Commission [ICC] certificate or permit requirements, that such object is unlawful, and therefore the contract is void. Snortland alleges that the arrangement between the parties requiring Snortland to transfer title to the trucks to North Central Jobbers was devised and employed by North Central Jobbers as a subterfuge solely to give North Central Jobbers the appearance of a legitimate private carrier and thereby evade the ICC certification and permit requirements.[5]

North Central Jobbers denies that the contract is unlawful and claims that the truck-transfer arrangements utilized in its operation were implemented under the direction and supervision of the ICC. North Central Jobbers states that it is a legitimate private carrier and is not in violation of the permit requirements of the Interstate Commerce Act. Because it hauls only its own merchandise or exempt agricultural products, North Central Jobbers asserts that it requires no permit from the ICC.

Essential to the existence of a contract in North Dakota is that the agreement must have a lawful object. Sec. 9–01–02, N.D.C.C. Section 9–08–01, N.D.C.C., provides:

"Any provision of a contract is unlawful if it is:

"1. Contrary to an express provision of law;

"2. Contrary to the policy of express law, though not expressly prohibited; or

"3. Otherwise contrary to good morals."

The issue of the possible unlawfulness of the contract in this case is analogous to an issue addressed by this court in *State Bank of Towner, Inc. v. Rauh,* 288 N.W.2d 299 (N.D.1980), wherein the contention was made that an oral guarantee was invalid because the obligation upon which it was

4. This section reads:

"9–04–03. *Unlawful, impossible, or unascertainable object voids contract.*—When a contract has but a single object, and such object is unlawful in whole or in part, or wholly impossible of performance, or so vaguely expressed as to be wholly unascertainable, the entire contract is void."

5. The relevant Federal statute in effect in 1977–1978 was 49 U.S.C. § 303(c), which provided:

"(c) Except as provided in section 302(c) of this title, subsection (b) of this section, in the exception in subsection (a)(14) of this section, and in the second proviso in section 306(a)(1) of this title, no person shall engage in any for-hire transportation business by motor vehicle, in interstate or foreign commerce, on any public highway or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such person a certificate or a permit issued by the Commission authorizing such transportation, nor shall any person engaged in any other business enterprise transport property by motor vehicle in interstate or foreign commerce for business purposes unless such transportation is within the scope, and in furtherance, of a primary business enterprise (other than transportation) of such person."

based was unlawful in that the transaction was used as a means of evading taxes. Recognizing the validity of the oral guarantee, we stated:

> "... there was nothing inherently illegal in the contract to purchase cattle, feed, and sell cattle. If the contract, however, was a facade to merely evade taxes, we believe the internal revenue laws have ample provisions for the imposition of appropriate penalties and punishment. Therefore, because the cattle feeding agreement was not in itself unlawful, Thompson's oral guarantee to Rauh was not extinguished because of possible underlying illegality." 288 N.W.2d at 307.

In *Beck v. Lind,* 235 N.W.2d 239 (N.D. 1975), this court, in considering a claim that a contract was invalid because it involved an arrangement which would avoid the payment of contributions to Social Security, stated:

> "A contract of employment for performing lawful personal service is per se not illegal. Therefore, if a contract or agreement for lawful personal services was entered into ... the contract or agreement would be valid. The question of illegality arises from the method and manner of payment as distinguished from the basic contract for personal services." 235 N.W.2d at 245.

In the instant case, there was nothing inherently illegal in the contract to supply trucks in return for possible benefit. However, if the contract was entered into merely as a subterfuge to evade some provision of the Interstate Commerce Act or the Commission's regulations, we believe the interstate commerce laws have ample provisions for the imposition of appropriate penalties and punishment. Because the truck-transfer agreement was not in and of itself unlawful, Snortland's obligation to North Central Jobbers pursuant to the terms of the oral contract was not extinguished because of a possible underlying illegality.

The judgment of the district court is affirmed.

ERICKSTAD, C.J., and PEDERSON, PAULSON and SAND, JJ., concur.