**LaVerne JOHNSON, Plaintiff and Appellee,**

v.

**MINERAL ESTATE, INC., Defendant and Appellant,**

and

**W.A. Bolinske, Defendant.**

**Civ. No. 10862.**

Supreme Court of North Dakota.

July 11, 1985.

Jonathan C. Eaton, Jr., of Eaton, Van de Streek & Ward, Minot, for plaintiff and appellee.

William P. Teevens (argued) and Bruce R. Montgomery, of Teevens, Johnson & Montgomery, Minot, for defendant and appellant.

VANDE WALLE, Justice.

Mineral Estate, Inc., appealed from the civil judgment of the district court, Dunn County, of October 28, 1984, awarding La-Verne Johnson $140,911.41 for breach of Mineral Estate's obligation to make a deferred bonus payment under a contract to lease property for oil and gas purposes. We affirm.

On the prior appeal of this case, *Johnson v. Mineral Estate, Inc.*, 343 N.W.2d 778 (N.D.1984), we set forth the facts pertinent to the case at that time:

"In November 1981, Mineral Estate, Inc., through its president, W.A. Bolinske, entered into a 30-day option agreement with LaVerne Johnson to lease property in Dunn County for oil and gas purposes. In consideration for the option, Mineral Estate paid Johnson $1,000. Five separate four-year term top leases were drawn to be effective September 9, 1982, the date at which the primary terms of the underlying leases expired.

"Before execution and delivery of the leases to Mineral Estate, Johnson took them to an attorney who added the following typewritten clause to each of the printed 'Producers 88' form leases:

'This lease shall be null and void unless the balance of bonus consideration is paid lessor before October 10, 1982.'

"The addendum clause, which appears at the bottom of the leases, is preceded by an asterisk. In the body of the printed leases, the asterisk appears at the end of the royalty and shut-in gas well clause.

"Pursuant to the option agreement, Mineral Estate delivered two sets of sight drafts to Johnson totaling $300 per mineral acre as the bonus consideration. The first set of drafts totaled $58,375.67 and were payable in 45 days. The second set of drafts totaled $125,945.83 and were payable not 'before October 9, 1982.' Mineral Estate recorded the leases.

"Johnson collected payment on the first set of drafts but the second set of drafts were returned unpaid. Mineral Estate relinquished the leases of record.

"Johnson brought suit against Mineral Estate and Bolinske seeking specific performance, *i.e.*, payment of the balance of the bonus consideration. Both parties moved for summary judgment. The district court granted Bolinske's motion for dismissal with prejudice on the ground that he was not a party to the lease agreement, but granted Johnson's motion against Mineral Estate and directed entry of judgment against it for the balance of the bonus consideration.... The court also denied Johnson's motion to amend her complaint to allege fraud against Bolinske."

On appeal in *Johnson, supra*, we reversed the district court's granting of summary judgment after determining that the language of the disputed provision of the leases was ambiguous and that a question of fact therefore existed which precluded summary judgment. The case was remanded to the district court for trial so that the trier of fact could consider extrinsic evidence as to the intention of the parties to the lease agreement.

After our remand of this case, the district court held a bench trial. Prior to the start of the trial Mrs. Johnson moved the court for permission to amend her complaint so as to allege the inadequacy of a legal remedy and to add an alternative cause of action for recovery for breach of contract and failure to pay the five drafts given by Mineral Estate to Mrs. Johnson. Mineral Estate resisted Johnson's motion contending that Johnson failed to give adequate notice of the amendment. The court, in granting Johnson's motion to amend, stated that Rule 15, N.D.R.Civ.P., would provide Mineral Estate with 10 days to respond to such amendment. Counsel for Mineral Estate indicated, however, that he was ready to respond at that time, and the parties proceeded to present evidence.

After the trial the district court made findings of fact including the following pertinent to this appeal:

"VI.

"Mr. Loder added the subject language to the lease in order to prevent a third party from acquiring the lease as a bona-fide purchaser and claiming rights thereunder notwithstanding that the bonus had not been paid.

"VII.

"The subject language was as follows: 'This lease shall be null and void unless the balance of the bonus consideration is paid lessor before October 10, 1982.'

"Considering all the circumstances the correct interpretation of the words 'null and void' as used by the parties, means the oil and gas lease is voidable at the election of the lessor if the bonus consideration is not paid in full by the lessee. This was to give the lessor an additional remedy if the bonus consideration was not paid in full and was not intended to change the basic contract commitment made by defendant Mineral Estate to pay the entire bonus.

"VIII.

"Though the language has been held to be ambiguous by the Supreme Court the evidence of the surrounding circumstances clearly establishes the parties' intent was to bind defendant Mineral Estate to pay the entire bonus and this was not changed by the addition of the subject language to the lease.

.　　.　　.　　.　　.

"XI.

"The bottom fell out of the market for oil and gas leases from the subject area in March of 1982 and no market for such leases continued throughout the rest of the year. Mineral Estate tried to find a buyer for these specific leases and could not, and chose not to honor the drafts because of the depressed business climate.

"XII.

"That in 1982 and subsequent to defendant's refusal to honor the drafts the plaintiff sought but was unable to find a lessee for the subject property."

On this appeal Mineral Estate presents three issues for our review: (1) Should the contract be considered null and void as there was no meeting of the minds, there was a mistake of fact, and there was ambiguity as to the meaning of the addendum clause; (2) Did the trial court abuse its discretion in allowing the plaintiff to amend her complaint on the day of the trial when the matter had been pending for two years; and (3) Did the trial court abuse its discretion in allowing full damages without a proof of loss and showing of good-faith mitigation attempts?

■ The thrust of Mineral Estate's first issue is that because the provision inserted by Johnson was ambiguous, as we concluded on the first appeal, and because Mineral Estate's understanding of the ambiguous language is different from that of Johnson, there is no "meeting of the minds" necessary to formulate an agreement between the two parties. We find no merit in this contention. Carried to its logical conclusion, this argument would apparently require that in each instance in which the language of a contract is ambiguous and the parties disagree as to its meaning the court must declare there is no contract. That is not, of course, the law. There is no doubt that the parties must consent to a contract. See Section 9–03–01, N.D.C.C. But Justice Vogel, writing for the court in *Amann v. Frederick*, 257 N.W.2d 436, 439 (N.D.1977), said it well:

"The invocation of the shorthand expression 'meeting of the minds' is more misleading than helpful in deciding contract issues. Mutual assent to a contract is indeed required, but that assent must be evidenced in some way, and if the evidence is clear enough, the contract will be binding, regardless of mental reservations or misunderstandings of one or both parties, in the absence of fraud or other recognized ground for setting aside the contract....

.　　.　　.　　.　　.

"Professor Williston sums it all up by saying that the term 'meeting of the minds' is a 'familiar cliché, still reëchoing in judicial dicta,' and that it is a nineteenth-century expression which seems to be contrary to the rule 'long ago settled that secret intent was immaterial, only overt acts being considered in the

determination of such mutual assent' as the law requires. Williston on Contracts, 3d Ed., § 22."

■ If we were to accept the construction placed upon the ambiguous language by Mineral Estate, we would be required to conclude that Mineral Estate believed Johnson's attorney inserted the language in the contract for the benefit of Mineral Estate, i.e., that the purpose of the added clause was to transform Mineral Estate's theretofore absolute obligation to make all the payments on the leases into an option to pay. It is, at best, improbable that was the intent of Johnson's attorney in adding the language to the contract and it might well be incredible to conclude that was Mineral Estate's understanding of that language. In any event, the rules for construing a contract have been set forth many times by this court. See, e.g., *Johnson v. Mineral Estate, Inc., supra.* In *Tallackson Potato Co., Inc. v. MTK Potato Co.,* 278 N.W.2d 417, 422 (N.D.1979), we stated, as a part of those rules:

> "If, however, the parties' intentions cannot be determined from the writing alone and reference must be made to extrinsic evidence, then those questions in regard to which extrinsic evidence is adduced are questions of fact to be determined by the trier-of-fact."

Applying, as we must, Rule 52(a), N.D.R. Civ.P., to our review of the record, we cannot conclude that the findings of the trial court were clearly erroneous or that a mistake has been made.

At trial Mrs. Johnson's former attorney testified that he dictated the language of the addendum clause to Mr. Bolinske during a telephone conversation subsequent to the time of the agreement between Mrs. Johnson and Bolinske. The attorney stated that Bolinske did not inquire concerning the clause's meaning, did not object to its addition, and did not make any statements as to what he thought the clause meant. The attorney testified that it was not his intention in including the addendum clause to provide Mineral Estate with an option to not pay the second bonus installment. The

attorney further testified that he included the addendum clause for two reasons: to provide Mrs. Johnson an additional remedy so that if the full bonus were not paid she would have the option of declaring the leases null and void; and to prevent an assignment of the leases by Mineral Estate to a third party when the full bonus had not been paid.

W.A. Bolinske testified that he negotiated the initial terms of the lease agreement with Mrs. Johnson and that subsequently he complied with her former attorney's request to add the addendum clause to the leases. Bolinske indicated that under the agreement with Mrs. Johnson, Mineral Estate agreed to pay the bonus on the condition that Mrs. Johnson provide good title and that the underlying lease terminate. Mr. Bolinske conceded that both conditions had been met by Mrs. Johnson.

Bolinske further testified that when the former attorney for Mrs. Johnson requested the addendum clause he did not respond that it would change the nature of the initial agreement with Mrs. Johnson. Bolinske did state that it was his opinion that the language of the addendum clause provided Mineral Estate with an option to not pay the second installment.

Bolinske further indicated that Mineral Estate chose to not pay the second bonus installment because the oil and gas market was depressed and that there was no demand by major oil companies to lease.

■ This was a matter peculiarly within the province of the trial court because it involved the testimony of witnesses and necessarily a determination as to their credibility. We find no error in either the trial court's findings of fact or conclusions of law.

■ Mineral Estate concedes in its second issue that a determination to allow an amended complaint is within the sound discretion of the trial court. The decision of the trial court to permit amendment of the pleading will not be disturbed on appeal in the absence of an abuse of discretion. See Rule 15(a), N.D.R.Civ.P., which provides in

part that leave to amend "shall be freely given when justice so requires." See also *Edwards v. Thompson*, 336 N.W.2d 612 (N.D.1983); *Bender v. Time Ins. Co.*, 286 N.W.2d 489 (N.D.1979); *Vasichek v. Thorsen*, 271 N.W.2d 555 (N.D.1978).

■ After our first opinion, it should have been fairly apparent to both parties that on retrial the issue might also involve the breach of the contractual obligation to pay the amount specified for the leases. See *Johnson v. Mineral Estate, Inc.*, *supra*, 343 N.W.2d at 781, fn. 2. Johnson should have moved to amend earlier but that does not end our inquiry. Mineral Estate has not illustrated, other than in generalities, the manner in which it was prejudiced by the trial court's decision to allow amendment of the complaint. In view of the additional time offered Mineral Estate to respond to the amended pleading and in absence of any specific allegation of prejudice we conclude the trial court did not abuse its discretion in allowing amendment of the complaint.

Mineral Estate's final argument is that the trial court should not have allowed recovery for the full amount of the five drafts because, under a breach of contract theory, Johnson had a duty to mitigate her damages and did not do so. Mineral Estate contends that Johnson should have leased or at least attempted to lease her lands after it declared the contract null and void.

■ The party injured by the breach of a contract must ordinarily make every reasonable effort to minimize damages and may not recover for damages which could have been avoided by reasonable efforts under the existing circumstances. *Atlas Ready-Mix of Minot v. White Properties*, 306 N.W.2d 212 (N.D.1981). Johnson, however, argues that the exception to that rule as set forth in Syllabus ¶ 1 by the Court in *Schneidt v. Absey Motors, Inc.*, 248 N.W.2d 792 (N.D.1976), should apply, i.e., the rule requiring the plaintiff to minimize the damages "is not applicable where the party who has a duty to perform a contract has equal opportunity for performance and equal knowledge of the consequences of nonperformance, as he cannot be heard to say that the other party might have performed for him." Johnson urges that Mineral Estate could have sold the leases itself and therefore cannot urge her failure to sell the leases to reduce the amount of damages.

■ We need not decide whether or not the exception to the rule requiring mitigation is applicable. The trial court found as a fact that there was no market for the leases and that Johnson sought but was unable to find a lessee for the subject property. Mineral Estate contends there is insufficient reliable evidence in the record upon which the court could rely to make such findings. We disagree. Furthermore, the trial court found that Mineral Estate tried to find a buyer for the leases and could not and then chose to not honor the drafts because of the depressed business climate. Mineral Estate contends that is not the reason it chose to not honor the drafts but rather the reason was that it "chose to declare the contract null and void in accordance with the added clause." That contention begs the issue of *why* Mineral Estate chose to declare the contract null and void under the added clause. We believe a fair inference is exactly that which the trial court found, i.e., it chose to do so because of the depressed business climate. Mineral Estate would have Johnson do what it attempted to do and could not. The trial court's findings are not clearly erroneous nor can we conclude that a mistake has been made. Rule 52(a), N.D. R.Civ.P.

The judgment is affirmed.

ERICKSTAD, C.J., LEVINE and GIERKE, JJ., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, participated in place of MESCHKE, J., disqualified.