Ray DELZER and Betty Jean Delzer,
Plaintiffs and Appellants,

v.

UNITED BANK OF BISMARCK,
Defendant and Appellee.

Civ. No. 940115.

Supreme Court of North Dakota.

Feb. 8, 1995.

Sonna M. Anderson (argued) and Harold L. Anderson (appearance), Anderson & Anderson, and Ray H. Walton (appearance), Ray H. Walton, P.C., Bismarck, for plaintiffs and appellants.

Patrick W. Durick (argued) and Larry L. Boschee (appearance), Pearce & Durick, Bismarck, for defendant and appellee.

NEUMANN, Justice.

Ray and Betty Jean Delzer appealed from a district court judgment granting United Bank's motion for judgment notwithstanding the verdict and conditionally granting a new trial. We reverse the judgment notwithstanding the verdict, affirm the grant of a new trial, and remand for a new trial.

The facts underlying this appeal are reported in *Delzer v. United Bank of Bismarck*, 459 N.W.2d 752 (N.D.1990) [*Delzer I*] and *Delzer v. United Bank of Bismarck*, 484 N.W.2d 502 (N.D.1992) [*Delzer II*], and will be repeated only as necessary to resolve the issues raised in this appeal.

In October 1979 Delzers and United discussed two plans for United to extend Delzers a line of credit for their ranching business. Delzers initially requested a $150,000 line of credit to finance their operating expenses, with current hay inventory and future hay sales to secure that loan. According to Delzers, United would not loan them the money without additional security, and Delzers refused to pledge all of their assets as security for the loan unless United assured them of an additional $122,500 to purchase cattle. Delzers then proposed a cattle plan, which provided for a $300,000 line of credit to finance Delzers' operating expenses and their purchase of cattle. According to United's loan comments, the collateral for that proposed loan was a security agreement on Delzers' machinery and equipment, a second mortgage on their land, and a guaranty from their son. On November 1, 1979, Delzers executed a written credit agreement with United and signed a promissory note for $150,000. As collateral for that loan, United obtained security agreements on Delzers' machinery and equipment, a second mortgage on their land, and a guaranty from their son.

United subsequently refused to advance Delzers money beyond the $150,000 loan. Delzers then sued United, alleging that, in conjunction with the written agreement, United breached an oral agreement to lend them an additional $150,000 to purchase cattle. They also contended that United deceived them by promising to fund their cattle purchase when it had no intention of performing that promise. United responded that the written credit agreement constituted the complete and final agreement between the parties.

In *Delzer I,* we reversed summary judgment in favor of United. We held that the statute of frauds did not bar enforcement of the alleged oral agreement for an additional $150,000 loan, because the alleged agreement was capable of being completed within one year under N.D.C.C. § 9–06–04(1). We also held that the written agreement for a $150,-000 line of credit was ambiguous and not clearly integrated, leaving a genuine issue of material fact about whether United agreed to provide Delzers with an additional $150,000 line of credit to purchase cattle. We further held that the record was sufficient to support reasonable inferences about the terms of the alleged oral agreement. We therefore remanded for trial.

In *Delzer II,* a majority of this court reversed a second summary judgment in favor of United. We held that a letter, which was sent by Ray Delzer to the first mortgagee of the Delzers' land and which was not part of the record in *Delzer I,* failed to remove all ambiguity about the written agreement. We reiterated that the written agreement was ambiguous and again remanded for trial.

On remand, the trial court bifurcated the issues of liability and damages. After a jury trial on liability, the jury returned a special verdict:

"1. Do you find by a preponderance of the evidence that on or before November 1, 1979, United Bank made a binding oral contract to lend $150,000 to plaintiffs for the purchase of cattle as part of an agreement to loan the total sum of $300,000? Yes _ No X

\*     \*     \*     \*     \*     \*

"4. Do you find by clear and convincing evidence that the Bank knowingly deceived the Delzers into giving all their property as security for the $300,000 loan when the bank knew it was only going to loan them the sum of $150,000? Yes X No _ "

Claiming those answers were inconsistent and there was insufficient evidence to support the deceit verdict, United moved for judgment notwithstanding the verdict on Delzers' deceit claim, and, alternatively, for a new trial. The trial court initially denied United's motion, explaining that a factual basis for the finding of deceit possibly could have been:

"The bank advised the Delzers that they were loaning $300,000 for the collateral in question. Some time between that statement and the loan closing, the bank altered its position and determined they were going to only loan $150,000. At the time of the loan closing, the information was never communicated to the Delzers and, in fact, the bank continued to make statements regarding cattle purchases which indicated to the Delzers they were still going to receive the $300,000. The bank knowingly made such statements to obtain the collateral in question. Ultimately, the bank advised them that no further monies would be forthcoming."

The trial court thereafter reconsidered its decision and concluded that there was no factual scenario which would allow the jury to find deceit after not finding an oral contract, reasoning:

"If the factual situation is as the plaintiff suggests, the contract nonetheless would have been formed and the jury would have found that an oral contract existed. The words and conduct of the bank would have superseded any undisclosed intent and the meeting of the minds as required by contract law would have resulted.

"Had the jury answered the [deceit] question ... in the negative, no harm would have followed. However, the answer is, under the circumstances, inconsistent and cannot be allowed to stand. I have previously indicated facts which I felt would result in the allowance of such a verdict. I find now that I was incorrect. I

am satisfied that the principles set forth in *Holt v. Swenson*, [252 Minn. 510] 90 NW2d 724 (Minn1958) show that under the factual scenario I proposed, a contract existed. The jury failed to so find and the two answers are total[ly] inconsistent.

"In reaching this determination, I have attempted to place great deference to the findings of the jury in this case. However, I believe the Court misled them in allowing them to answer Question Number 4 [the deceit question] on the basis of the evidence in the record and without finding that the [defendant] had breached [its] oral agreement. In that respect, it was confusing and misleading to the jury.

\*   \*   \*   \*   \*   \*

"I am now satisfied that no independent cause of action existed in tort. The only facts presented to the jury were those which alleged the formation of a contract. Once the jury ruled on that issue, it was err[or] for me to allow them to make further determinations."

The trial court granted United's motion for judgment notwithstanding the verdict on Delzers' deceit claim and also conditionally granted a new trial on that claim in the event of reversal of the judgment notwithstanding the verdict. Delzers appealed.

■ Delzers argue that the tort of deceit may exist independently of the contract claim and that, under the trial court's instructions on contract and deceit, the verdict is not inconsistent. United responds that the jury's verdict is inconsistent and that the trial court properly granted judgment as a matter of law on the deceit claim, because there was no evidence of deceit independent of the contract claim and there were no damages under Delzers' over-collateralization theory of deceit.

■ Our analysis of these issues requires a brief explanation of "fraud" and "deceit." Under our statutory definitions of "fraud" and "deceit," the same conduct, a promise made without any intention of performing, can constitute both "deceit" and "fraud." *Compare* N.D.C.C. § 9–03–08(4) *with* § 9–10–02(4). *See Dewey v. Lutz*, 462 N.W.2d 435 (N.D.1990). Although the same conduct can be both deceitful and fraudulent and those terms are often used interchangeably, technically "fraud" under Chapter 9–03, N.D.C.C., applies to parties to a contract, while "deceit" under Chapter 9–10, N.D.C.C., applies where there is no contract between the parties. *Dewey v. Lutz, supra; Hellman v. Thiele*, 413 N.W.2d 321 (N.D.1987).

Under Chapter 9–03, N.D.C.C., "[a] promise made without any intention of performing it" and with intent to deceive or to induce another to enter into a contract is "actual fraud" for purposes of nullifying apparent free consent to the contract. N.D.C.C. §§ 9–03–01, 9–03–03, and 9–03–08(4). If there is a contract between the parties and a party's apparent free consent to the contract is obtained by fraud, N.D.C.C. § 9–03–02 authorizes the defrauded party to rescind the contract in the manner prescribed by Chapter 9–09, N.D.C.C. The defrauded party may also affirm the contract and recover damages. *Schaff v. Kennelly*, 61 N.W.2d 538 (N.D.1953); *Beare v. Wright*, 14 N.D. 26, 103 N.W. 632 (1905); *see* Restatement (Second) of Torts § 549 (1977); Calamari and Perillo, Contracts § 9–23 (3rd ed.1987); Dobbs, Remedies § 9.1 et seq. (1973); Prosser and Keeton on Torts § 110 (5th ed.1984); 37 Am.Jur.2d, *Fraud and Deceit* § 327 (1968).

■ Under Chapter 9–10, N.D.C.C., if there is no contract between the parties, "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers," and "deceit" is defined as "[a] promise made without any intention of performing." N.D.C.C. §§ 9–10–01, 9–10–02(4), and 9–10–03. Under those statutes, a promise made without any intention of performing it which does not meet the requirements of a contract between the parties may nevertheless satisfy the requirements of deceit, and the victim of that deceit may recover for any damage suffered.

United's reliance on *Pioneer Fuels v. Montana–Dakota Utilities Co.*, 474 N.W.2d 706 (N.D.1991), to support its argument that conduct independent of a contract claim is required to establish the tort of deceit is misplaced. In *Pioneer Fuels* the plaintiff al-

leged that the defendant breached a contract with the plaintiff, that the breach constituted the tort of deceit, and that the plaintiff was entitled to damages for breach of contract and for the tort of deceit, as well as exemplary damages. The jury found that the defendant breached the contract, resulting in breach of contract damages of $76,597.04. The jury further found that the defendant's breach of contract was done with malice, fraud, deceit or oppression, resulting in tort damages of $76,597.04. The jury also awarded exemplary damages of $1,800,000.00, on the tort claim. The trial court sustained the verdict on the breach of contract claim, but granted judgment notwithstanding the verdict on the tort and exemplary damage claims. This court affirmed the judgment notwithstanding the verdict on the tort and the exemplary damage claims, because there was no evidence that the defendant "committed an independent tort, separate and distinct from its breach of contract." *Id.* at 710.

■ *Pioneer Fuels* stands for the principle that, where there is a breach of contract, there must be some additional, independent facts not connected to the manner of the breach of contract to support tort and exemplary damage claims. *See* 22 Am.Jur.2d, *Damages* § 752 (1988) (exemplary damages ordinarily not recoverable in action for breach of contract, unless breach amounts to an independent, willful tort). However, when the parties' actions do not meet the requirements for a contract, *Pioneer Fuels* does not preclude tort recovery for deceit, if the elements of deceit under Chapter 9–10, N.D.C.C., are established. *See Dewey v. Lutz, supra* (even if some defendants were not parties to contract, there was sufficient evidence to support jury's alternative findings of deceit by those defendants); *State Bank of Kenmare v. Lindberg,* 471 N.W.2d 470 (N.D.1991) (allegations of extra-contractual statements by lender which induced borrower to alter position sounds in tort).

Here, the jury found there was no oral contract to lend Delzers an additional $150,-000, but that United knowingly deceived the Delzers. *Pioneer Fuels* is not controlling because the jury found that the elements of an oral contract to loan an additional $150,-000 had not been met, but that United's actions regarding the alleged additional $150,000 loan satisfied the requirements for deceit. When there is no contract between the parties, *Pioneer Fuels* and our statutory provisions for deceit do not preclude tort recovery if the separate elements of deceit are established. *See Dewey v. Lutz, supra.* The problem present in *Pioneer Fuels*—the only evidence presented to support the tort claim was evidence of the breach of a contract—is not present here. In granting the judgment notwithstanding the verdict, the trial court erred in concluding that the tort of deceit could not exist in the absence of a contract.

■■ The trial court also determined that the jury's answers to the special verdict were inconsistent. In reconciling apparent inconsistencies in a jury's answers to a special verdict, the test is:

> " 'Whether the answers may fairly be said to represent a *logical and probable decision* on the relevant issues as submitted. If after a review of the district court's judgment no reconciliation is possible and the inconsistency is such that the special verdict will not support the judgment entered below or any other judgment, then the judgment must be reversed and the case remanded for a new trial.' "

*Binstock v. Fort Yates Pub. School District,* 463 N.W.2d 837, 839–40 (N.D.1990) (emphasis in original) citing *Grenz v. Kelsch,* 436 N.W.2d 552, 553 (N.D.1989). To determine if the verdict can be reconciled, we look at how the relevant issues were submitted to the jury, and jury instructions that are not objected to become the law of the case. *Grenz v. Kelsch, supra.*

The trial court instructed the jury on the elements of contract and on deceit.[1] United

---

1. The trial court instructed the jury on deceit in language following N.D.C.C. §§ 9–10–03 and 9–10–02(4) and then outlined the "elements necessary to find deceit":

"In order for you to find deceit on the part of the Defendant, the Plaintiffs must prove that the Defendant made a false representation involving a promise. The Plaintiff must also prove the following elements:

initially proposed the contract instructions, which tracked NDJI–Civil 800. Delzers did not object to the contract instructions, and they became the law of the case. The contract instructions said that an essential element of a contract was "[c]onsent of the parties." *See* N.D.C.C. § 9–01–02. The instructions specified that "[c]onsent is not mutual unless both the parties agree upon the same terms and conditions in the same sense" and "[t]o constitute consent, the acceptance must be absolute and unqualified." [2] *See* N.D.C.C. §§ 9–03–01; 9–03–16; 9–03–17; 9–03–20; 9–03–21.

In determining that the jury verdict was inconsistent, the trial court relied on the principle that the parties' objective manifestations, not their secret intentions, governed their mutual consent and acceptance of terms of a binding oral contract. The trial court concluded that, if the factual situation was as suggested by Delzers, United's words and conduct would have superseded any undisclosed intent and a contractual meeting of the minds would have resulted. However, the contract instructions, which are the law of the case, said that "acceptance must be absolute and unqualified" and did not allow for a meeting of the minds through the parties' objective manifestations.[3]

Under the instructions, the jury could have logically found that there was no mutual consent to the alleged oral agreement between Delzers and United because United secretly intended not to perform, and therefore there was not an absolute and unqualified acceptance. The jury could also logically have found that United made certain extra-contractual promises which it did not intend to perform and which did not meet the requirement of an "absolute and unqualified" acceptance, but nevertheless satisfied the requisites for the tort of deceit under Chapter 9–10, N.D.C.C. *See State Bank of Kenmare v. Lindberg*, 471 N.W.2d 470 (N.D. 1991) (allegations of extra-contractual statements by lender which induced borrower to alter position sounds in tort). We hold that,

---

"1. That the representation was a material fact; and
"2. That the representation was made with knowledge of the falsity; and
"3. That the representation was made with an intent to deceive the Plaintiff; and
"4. That the Plaintiff must have justifiably relied on the representation.
"If you find *all* of the above elements proven by clear and convincing evidence, then you should find that the Defendant deceived the Plaintiffs. If not, you should find that they did not."

2. The contract instruction said, in part:

"The consent of the parties to a contract must be:
"1. Free;
"2. Mutual; and
"3. Communicated to each other.
"Consent is not mutual unless both the parties agree upon the same terms and conditions in the same sense. Consent can be effectively communicated only by some act or omission of the party contracting by which he intends to communicate it, or which necessarily tends to such communication. Performance of the condition of a proposal or the acceptance of the consideration offered with a proposal is acceptance of the proposal. To constitute consent, the acceptance must be absolute and unqualified."

3. In *Amann v. Frederick*, 257 N.W.2d 436, 439 (N.D.1977), this court explained consent:

"The invocation of the shorthand expression 'meeting of the minds' is more misleading than helpful in deciding contract issues. Mutual assent to a contract is indeed required, but that assent must be evidenced in some way, and if the evidence is clear enough, the contract will be binding, regardless of mental reservations or misunderstandings of one or both parties, in the absence of fraud or other recognized ground for setting aside the contract. It is the words of the contract and the manifestations of assent which govern, not the secret intentions of the parties . . .

\*     \*     \*     \*     \*     \*

" 'Assent, in the sense of the law, is a matter of overt acts, not of inward unanimity in motives, design, or the interpretation of words.'

\*     \*     \*     \*     \*     \*

"Professor Williston sums it all up by saying that the term 'meeting of the minds' is a 'familiar cliché , still reechoing in judicial dicta,' and that is a nineteenth-century expression which seems to be contrary to the rule 'long ago settled that secret intent was immaterial, only overt acts being considered in the determination of such mutual assent' as the law requires."

*See Johnson v. Mineral Estate, Inc.*, 371 N.W.2d 136 (N.D.1985); *Voltz v. Dudgeon*, 334 N.W.2d 204 (N.D.1983); *North Central Jobbers v. Snortland*, 329 N.W.2d 614 (N.D.1983); *Anderson v. Mooney*, 279 N.W.2d 423 (N.D.1979). *See also Holte v. Swenson*, 252 Minn. 510, 90 N.W.2d 724 (1958).

in concluding that the jury verdict was inconsistent and granting judgment notwithstanding the verdict on the deceit claim, the trial court erred in relying on the parties' objective manifestations for mutual consent when the jury had not been instructed about consent in that manner.

Deceit is ordinarily not susceptible of direct proof and may be inferred from the circumstances. *Dewey v. Lutz, supra; Miller Enterprises, Inc. v. Dog N' Cat Centers of America*, 447 N.W.2d 639 (N.D.1989). We cannot say, as a matter of law, that United's actions did not constitute deceit.[4] Reasonable persons could not reach but one conclusion about United's actions, and we hold that the trial court erred in granting judgment notwithstanding the verdict on the deceit claim.[5] *Okken v. Okken*, 325 N.W.2d 264 (N.D.1982).

With its motion for judgment notwithstanding the verdict, United alternatively moved for a new trial on the ground that the deceit verdict was against the weight of the evidence. The trial court conditionally granted the motion, ruling that there was insufficient evidence to have allowed the issue of deceit to go to the jury.

In considering a motion for new trial on the ground that the verdict is against the weight of the evidence, the trial court has a certain amount of discretion to weigh all the evidence and judge the credibility of the witnesses. *Okken v. Okken, supra.* A motion for a new trial is addressed to the sound

discretion of the trial court, and its decision to grant a new trial will not be disturbed on appeal absent a showing of an abuse of that discretion. *Okken v. Okken, supra.* We have defined an abuse of discretion to mean action that is unreasonable, arbitrary, or unconscionable. *Wall v. Penn. Life Ins. Co.*, 274 N.W.2d 208 (N.D.1979). Because the denial of a new trial brings the case to an end, whereas the granting of a new trial results in the trial of the case to another jury, we require a strong showing that the trial court abused its discretion in granting the motion for a new trial before we will reverse an order granting the motion. *Okken v. Okken, supra.*

Using this more lenient standard of review, we conclude that the trial court did not act in an unreasonable, arbitrary, or unconscionable manner in granting a new trial on the deceit claim and therefore did not abuse its discretion. However, because questions about representations to form a contract are intertwined with questions about representations for deceit, we conclude that a new trial on the contract claim is also necessary.

Delzers also argue that the trial court erred in bifurcating the issues of liability and damages and in ruling on the admissibility of certain evidence. Those matters involve the exercise of discretion by the trial court. On this record, we cannot say that the court abused its discretion. However, the court is free to reconsider those issues if they arise on retrial.

---

4. As previously noted, similar conduct, a promise made without any intention of performing it, can constitute either deceit if there is no contract between the parties, or fraud if there is a contract and one party's apparent consent to the contract is obtained as a result of that promise. Here, the jury's answer to the deceit question suggests that it could have logically found that United's alleged oral promise for an additional $150,000 line of credit was an inducement for Delzers to enter into the November 1, 1979 written agreement. Delzers' allegation that United made an oral promise to loan them an additional $150,000 with no intention of performing, sounds of fraud in the inducement of the written agreement. *See* N.D.C.C. § 9–03–08(4) (promise made by a party to a contract without any intention of performing it may be fraud to induce the other party to enter into the contract). However, the jury was not instructed about fraud as it relates to apparent consent to a contract, and the parties have not postured the case in that manner. Under that theory, a defrauded party may rescind the contract, or affirm it and recover damages. *Schaff v. Kennelly*, 61 N.W.2d 538 (N.D.1953); *Beare v. Wright*, 14 N.D. 26, 103 N.W. 632 (1905); *see* 37 Am.Jur.2d, *Fraud and Deceit* § 327 (1968).

5. We reject United's argument that Delzers did not incur any damage because they could have refinanced their loan at a different lending institution. The issue of damages was bifurcated from the issue of liability, and the trial involved only the issue of liability. Any conclusion at this point about damages, or the possibility of the Delzers obtaining different financing arrangements in that context is speculative.

We reverse the judgment notwithstanding the verdict, affirm the grant of a new trial, and remand for new trial in accordance with this opinion.

VANDE WALLE, C.J., and SANDSTROM, MESCHKE, JJ. concur.

LEVINE, Justice, dissenting.

In *Delzer v. United Bank*, 484 N.W.2d 502 (N.D.1992), I dissented from the majority decision reversing the trial court's grant of summary judgment. Although that case did not deal with the issue of deceit, it did deal with the issue of the alleged oral contract, and I agreed with the trial judge that there was no material issue of fact which required a trial by jury, given the admission by Mr. Delzer, in a letter to his mortgage company, that he and United Bank had agreed, not to a $300,000 loan, but to a $150,000 operating loan with no funds for any cattle purchase.

Needless to say, at trial, the Bank spent a good deal of time cross-examining Mr. Delzer on this letter. As the majority in *Delzer, supra*, anticipated, the letter was, to say the least, "awkward for the Delzers to explain." *See Delzer, supra* at 506. As I read the cold record, the Bank seriously impugned Delzer's credibility. On top of that, there were inconsistent statements by Delzer in prior depositions and at trial, all of which the jury heard. So, I can readily understand the jury's finding, based on its assessment of the credibility of Mr. Delzer, that there was no oral contract between the Delzers and United Bank. I also readily understand the trial judge's decision that because there was no contract between the parties, the jury's finding of deceit was illogical and inconsistent.

I have difficulty with the majority opinion because it unsettles what, until now, has been settled law. That law has been incorporated into our pattern jury instructions which have guided trial lawyers and trial judges for a long, long time. In holding those jury instructions inadequate and misleading, the majority, I believe, does real mischief to our law.

The majority's bottom line is that there is no inconsistency in the verdict because the reason there was no oral contract found by the jury could have been because the jury thought that United Bank "secretly intended not to perform, and therefore there was not an absolute and unqualified acceptance" and so, the jury thought, there was no contract.

Apparently, the use of the phrase in the instruction that "an acceptance must be absolute and unqualified to constitute consent," somehow made the secret intentions of the parties, rather than their observable conduct and speech, the basis of a finding that a contract was not created. It is difficult for me to understand how anyone, let alone a panel of eight jurors, could so convolute the meaning of plain English. If I offer to buy "A" from you, and you agree to sell me "A" if I will also buy "B", under the instruction, there is no consent, because there is no absolute and unqualified acceptance by you of my offer to buy "A". Consequently, there is no contract. The requirement of an absolute and unqualified acceptance has nothing to do with my secret intentions, or yours, and I wonder why anyone would think otherwise. In finding to the contrary, the majority invalidates an instruction that lawyers and judges have long relied on. It is also an instruction that adequately explains the law of contracts. Nothing in the instruction says that contracts may be formed based on secret intentions. To the contrary, the instruction says that the parties "must agree upon the same terms and conditions in the same sense." That means that an acceptance must comply with the terms of the offer. *Greenberg v. Stewart*, 236 N.W.2d 862, 868 (N.D.1975).

The instructions given by the trial judge follow numbers 800 and 810 of the North Dakota Civil Pattern Jury Instructions. In No. 810 and in the instruction given by the trial court, it is clearly stated that: "An express contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, *so far as the same is ascertainable* and lawful." (Emphasis mine.) If, perhaps, the jurors were inclined to be as imaginative as the majority hypothesizes, even those iconoclasts would have had to understand the clear direction of the instruction that a contract depends upon the *ascertainable* mutual intention of the parties. "Ascertain" means

"to make [a person] certain, sure, or confident"; "to find out or learn for a certainty"; it is synonymous with discover. Webster's Third New World Internat'l Dictionary, Unabridged, 1971. "Ascertainable" is an adjective which is defined as "capable of being ascertained." *Id.* To the extent that the so-called secret intentions of the parties were considered, they could not have been "ascertainable," that is, made certain, and therefore, could not have been considered as the mutual intention of the parties.

The jury was instructed that the written contract evidencing a loan of $150,000 did not preclude necessarily the alleged separate oral agreement to lend $150,000 for cattle, but that the Delzers had to establish that a separate oral agreement existed for the financing of the purchase of cattle. I agree with the trial judge that, having found no contract for the loan of the $150,000 for cattle, the jury could not have found any promise to lend the extra $150,000, because the promise underlying both the deceit and the contract is the same. The majority is mistaken in its theory that "[t]he jury could ... logically have found that United made certain extra-contractual promises which it did not intend to perform and which did not meet the requirement of an 'absolute and unqualified' acceptance." In a conference in chambers following the conclusion of plaintiffs' case, plaintiffs' attorney explained plaintiffs' deceit claim:

> "Well, as we've discussed previously, it's our position that the deceit, if any, comes about on the question of whether or not the bank officers, specifically Mr. Keeley, Mr. Hurdelbrink and Mr. Reno, misled the plaintiffs on November 1 into signing a document that they did sign with a promise to provide cattle that they never intended to comply with, and because of that, they got the Delzers into this loan agreement. And if they made a promise that was relied upon by the Delzers and didn't intend to do it, that constitutes deceit."

The only promise that plaintiffs claimed and, therefore, the only promise that counts here is the one allegedly made for the loan of $150,000 for the purchase of cattle, the very promise the jury found was not made.

I would affirm, and so I respectfully dissent.