**Abram TSUDEK, Appellant,**

v.

**TARGET STORES, INC., Respondent.**

**No. C9–87–1011.**

Court of Appeals of Minnesota.

Oct. 27, 1987.

Review Denied Dec. 13, 1987.

Mitchel I. Kirshbaum, John N. Renckens, Minneapolis, for appellant.

Gene P. Bradt, Hansen, Dordell, Bradt, Odlaug & Bradt, St. Paul, for respondent.

Heard, considered and decided by WOZNIAK, P.J., and FOLEY and CRIPPEN, JJ.

## OPINION

WOZNIAK, Judge.

Abram Tsudek appeals from the trial court's denial of a motion for a new trial following a jury verdict finding he was not slandered by an employee of respondent Dayton–Hudson, Inc., dba Target Stores. He claims the evidence did not support the verdict, the answers to the special verdict form were inconsistent, and that a new trial was justified to allow an instruction to the jury on the elements of intentional infliction of emotional distress. We affirm.

## FACTS

In November 1983, at one of respondent's Target Stores, Kevin Paulus stopped a man suspected of stealing a calculator. Paulus, a store security guard, had witnessed the man shopping in the store over a dozen times on previous occasions. The suspect was taken to a questioning room; he demanded the police be contacted, and produced a driver's license identifying himself as Oleg Adamovich. The man was Russian, walked with a limp, and used a cane. Paulus further testified that Adamovich was between 5'11" to 6'2" tall, of medium build, and with black/gray hair and a mustache. The store incident report

listed Adamovich as 6'1" tall, 176 pounds, with black hair.

Adamovich indicated he was not employed, but was receiving workers' compensation benefits. Paulus testified that he spent approximately one to one and one-half hours with Adamovich. Security then issued Adamovich a no trespass warning prohibiting him from entering the Target store in the future.

On January 8, 1984, Paulus saw a man in the store he believed was Adamovich. He verified his identification with his superior, who also recognized the man as Adamovich. The man identified was Russian, walked with a limp, used a cane, and had a similar build and hair color. Paulus approached the appellant, Abram Tsudek, and informed him he was trespassing. Tsudek denied any prior trouble at the Target store and produced a driver's license identifying himself as Abram Tsudek. Paulus and his superior examined the license, asked Tsudek if he had a twin brother, and then allowed Tsudek to depart. Tsudek also receives workers' compensation benefits due to a job injury which forced him to stop working. Tsudek testified that he was 5'8" tall and weighed 155 pounds the day he was stopped. Despite these height and weight inconsistencies, Paulus testified that he still believed Tsudek was the same man who was stopped earlier for stealing the calculator.

The discussion took three to five minutes, in conversational tones, and Paulus testified they did not attract a crowd. Tsudek testified there were many people in the area, some who stopped to listen. Malvina Bolmov, a Russian emigrant and acquaintance of Tsudek who witnessed the incident, testified that she saw Tsudek surrounded by people and that he appeared excited. She also heard other shoppers say that Tsudek had stolen something.

Tsudek testified the incident upset him and that word spread throughout the tightly-knit Russian–Jewish community, resulting in ill will towards him. Following financial difficulties with a small store he owned and the loss of his wife's job, the Tsudeks sold their house and moved to New York, eventually settling in Toronto, Canada. He claimed they moved because he was being ostracized by the Russian community.

None of the witnesses had ever heard of Oleg Adamovich. Zinarda Shirl, who at one time was director of a Russian organization which helped recently immigrated families, testified that she knew 99% of everyone in the Russian community. She had never heard of Adamovich or of anyone else who resembled Tsudek.

At the close of evidence, Tsudek's counsel voluntarily dismissed the claim for intentional infliction of emotional distress. The special verdict form submitted to the jury consisted of five questions, beginning with whether Tsudek was slandered. Following the first question, the form read "regardless of your answer to the previous question, you must answer the following questions." The remaining four questions regarded the amount of compensatory damages, and whether the respondent acted with willful indifference, justifying punitive damages. The jury subsequently found no slander and answered the additional special verdict questions as instructed by finding that Tsudek sustained $1,000 in compensatory damages, respondent acted with willful indifference, and listed $50,000 punitive damages.

The trial court denied Tsudek's motion for a new trial or JNOV. The court held that special verdict answers were to be reconciled if possible, and found the answers to questions 2–5 merely followed the form's instructions to answer the remaining questions regardless of their prior answer. Further, the court determined the jury clearly found Tsudek was not slandered. The reason for the inconsistency was interpreted as merely following the form to indicate the damages if Tsudek had been slandered. A further request to issue supplemental findings to the special verdict form on the issue of intentional infliction of emotional distress also was denied because Tsudek's counsel voluntarily dismissed the issue at the close of the evidence.

## ISSUES

1. Does the evidence support the jury's finding that the appellant was not slandered?

2. Did the trial court err in finding the inconsistent special verdict answers were reconcilable?

3. Did the trial court err in refusing to make additional findings on the elements of intentional infliction of emotional distress?

## ANALYSIS

■■■ 1. In order for a statement to be considered defamatory, it must be communicated to someone other than the plaintiff, it must be false, and it must tend to harm the plaintiff's reputation and to lower him in the estimation of the community. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980). Truth is a complete defense, and true statements, however disparaging, are not actionable. *Id.*

The parties do not greatly dispute the elements of communication or harm. Tsudek's insufficiency of the evidence claim is centered around the falsity of the statements. He claims the only reasonable inference from the evidence is that he was falsely accused of shoplifting.

■■■ The truth or falsity of a statement is "inherently within the province of the jury." *Lewis v. Equitable Life Assurance Society of the United States*, 389 N.W.2d 876, 889 (Minn.1986). A jury's finding on the issue of falsity will not be overturned "unless the finding is manifestly and palpably contrary to the evidence." *Id.* The jury clearly found Tsudek was not slandered. Despite Tsudek's claims, Paulus testified that Adamovich and Tsudek were the same person. Paulus had witnessed Tsudek in the store on 12 prior occasions and also had spent an hour and a half with him after he was detained for shoplifting. Both men were Russian, walked with a limp, used a cane, had black hair, and were receiving workers' compensation benefits. Respondent does not claim Adamovich does not exist, only that, as frequently happens in shoplifting cases, false identification was used.

Weighing conflicting testimony and determining witness credibility is within the province of the jury. *Young v. Wlazik*, 262 N.W.2d 300, 310 (Minn.1977). We find the jury's determination is not manifestly contrary to the evidence.

■■■ 2. On review, an answer to a special verdict question will be set aside only if perverse and palpably contrary to the evidence. *Hauenstein v. Loctite Corp.*, 347 N.W.2d 272, 275 (Minn.1984). If the answers to special verdict questions can be reconciled on *any* theory, the verdict will not be disturbed. *Id.* (citing *Nihart v. Kruger*, 291 Minn. 273, 276, 190 N.W.2d 776, 778 (1971)). A jury verdict will be overturned only if no reasonable mind could find as did the jury. *Belden Porter Co. v. Kimball Co.*, 303 Minn. 98, 99, 226 N.W.2d 310, 310 (1975).

Although the jury found Tsudek was not slandered, its special verdict answers listed compensatory damages. The verdict form also indicated the respondent acted with willful indifference, and thus listed a punitive damage amount. The trial court found the inconsistencies reconcilable because the special verdict form provided that the jury was to answer questions two through five regardless of how it answered the first question regarding whether Tsudek was slandered. First, the court noted the jury clearly found Tsudek was not slandered. Second, the court held that the assessment of compensatory and punitive damages is what the jury would have awarded had Tsudek proven his claim.

■■■ During deliberations, the jury asked if damages could be awarded if they found Tsudek was embarrassed but not slandered. The foreperson stated the jury was not sure if they were to "fill in all the blanks," but the court recited the verdict form's clear language and instructed that they must answer the additional questions regardless of how they answered the first question. The jury was instructed upon both the elements and burden of proof for slander and the burden of proof for awarding punitive damages. Neither party ob-

jected to the instructions given by the trial court. We find the trial court did not err in refusing to disturb the verdict since there was a reasonable theory to reconcile the verdict.

3. Tsudek additionally contends the trial court erred in failing to make additional findings or instruct the jury on the elements of intentional infliction of emotional distress. He claims the jury's finding that the respondent acted with willful indifference is tantamount to a finding of intentional infliction of emotional distress.

Tsudek's counsel, however, voluntarily withdrew this claim at the close of the evidence. In regard to instructions given by the trial court to assist the jury in making its fact findings, Minn.R.Civ.P. 49.-01(1) in pertinent part provides:

> If * * * the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand, the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

Here, the trial court refused to make additional findings. It based its refusal on the fact that there had been no discussion of the issue of intentional infliction of emotional distress prior to the completion of closing arguments or before the issuance of jury instructions.

■ In addition, although punitive damages are defined under Minn.Stat. § 549.20 (1986) as willful indifference to the rights and safety of others, the elements of intentional infliction of emotional distress include acts that are extreme and outrageous, intentional and reckless, which cause severe emotional distress. *Hubbard v. United Press International, Inc.,* 330 N.W.2d 428, 438–39 (Minn.1983). The elements of proof for each theory are not so similar that the jury's finding of willful indifference equates a finding of intentional infliction of emotional distress. Because the elements of proof for the two theories

are distinct and because Tsudek voluntarily withdrew his claim, we find the trial court did not err in refusing to make additional findings or instruct the jury on the issue of intentional infliction of emotional distress.

## DECISION

The evidence supports the jury's finding that appellant was not slandered. The trial court did not err in finding the inconsistent verdict answers were reconcilable. Finally, the trial court did not err in refusing to make additional findings or instruct the jury on the elements of intentional infliction of emotional distress.

Affirmed.