David GRENZ, Plaintiff and Appellee,

v.

Candace KELSCH, Defendant
and Appellant.

Civ. No. 880198.

Supreme Court of North Dakota.

Feb. 14, 1989.

Pearce and Durick, Bismarck, for defendant and appellant; argued by B. Timothy Durick and Larry L. Boschee.

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for plaintiff and appellee; argued by Arnold V. Fleck.

LEVINE, Justice.

Candace Kelsch appeals from an order for a partial new trial granted for David Grenz. We reverse.

Grenz sustained injuries in a car/pedestrian accident and sued Kelsch, the driver of the car. A jury found total damages of $27,000, and apportioned thirty percent negligence to Grenz and seventy percent to Kelsch. Grenz moved for additur or a new trial on damages. Concluding that the jury verdict was inconsistent and the evidence insufficient to justify the amount of damages, the trial court granted additur of $15,000 for future pain, discomfort and mental anguish and $20,000 for permanent disability. Kelsch rejected additur and the trial court granted a new trial on the issue of damages. Kelsch appealed.

Kelsch contends that the jury's award is not inconsistent. We agree. In awarding total damages of $27,000, the jury answered the special verdict form as follows:

"(1) Past medical expenses $ 2,235.00;

"(2) Past loss of productive time $12,000.00;

"(3) Future loss of productive time $11,000.00;

"(4) Past pain, discomfort and mental anguish $ 1,765.00;

"(5) Future pain, discomfort and mental anguish $ –0– ;
"(6) Permanent disability $ –0– ;

"TOTAL $27,000.00."

The trial court found the verdict on damages to be inconsistent and explained:

"Given the evidence in this case, it is not a logical and probable decision to award damages for future loss of productive time and nothing for future pain, discomfort and mental anguish and permanent disability. The latter two are the premise upon which a future loss of productive time award must be based. Without a permanent disability or future pain, discomfort and mental anguish there cannot logically under the evidence in this case be a loss of future productive time."

The trial court appears to have concluded that both the law and the evidence precluded the jury from awarding damages for future loss of productive time without awarding damages for permanent disability as well as for future pain, discomfort and mental anguish. The trial court concluded that the absence of such accompanying awards created an inconsistent verdict which could not be reconciled, and it granted a new trial on the issue of damages. Because no issue is raised about the sufficiency of the evidence to sustain the award for future loss of productive time, we accept as a given that the jury was justified in making such an award.

Generally, special verdicts are upheld on appeal whenever possible and will be set aside only if perverse and clearly contrary to the evidence. *Massey–Ferguson Credit Corp. v. Orr,* 420 N.W.2d 1, 3 (N.D.1988); *Tsudek v. Target Stores, Inc.,* 414 N.W.2d 466, 469 (Minn.Ct.App.1987). The test for reconciling apparent conflicts in the jury's answers is:

"[W]hether the answers may fairly be said to represent a *logical and probable decision* on the relevant issues as submitted. If after a review of the district court's judgment no reconciliation is possible and the inconsistency is such that the special verdict will not support the judgment entered below or any other judgment, then the judgment must be reversed and the case remanded for a new trial." *Massey–Ferguson Credit Corp., supra* at 3 [quoting 5A Moore's Federal Practice ¶ 49.03[4], at 49–29 to 32 (1987) ].

If the jury's answers are "logical and probable" when considered in light of "the relevant issues as submitted" the answers are reconcilable. *Massey–Ferguson, su-*

*pra.* Therefore, to determine if the verdict can be reconciled, we look first to how the relevant issues were submitted to the jury. The special verdict asked the jury to consider various elements of damages. The jury was instructed on those elements. Unless there is an objection, a jury instruction becomes the law of the case. *Benedict v. St. Luke's Hospitals,* 365 N.W.2d 499, 502 (N.D.1985). Our analysis is directed first to the law of the case and then to the evidence.

■ The jury awarded damages for future loss of productive time, but found that Grenz suffered no permanent disability and no future pain, discomfort and mental anguish. Whether this is inconsistent depends upon how these elements of damages were submitted to the jury.

The jury was instructed that loss of productive time was:

"The reasonable value of the productive time, if any, necessarily lost by the Plaintiff since the injury and of any *productive time that you find the Plaintiff will lose in the future because of the impairment of his occupational ability.* In this regard, you may consider any loss of his earnings, any impairment of his earning capacity, the manner in which he ordinarily occupied his time before the injury, *his state of health and physical ability, the nature and extent of his injury, whether or not it is permanent or, if not permanent, the extent of its duration,* and all other factors bearing upon his earning capacity." [Emphasis added.]

According to the instruction, the jury was to find the reasonable value of productive time that would be lost in the future due to impairment in occupational ability. Although there was no instruction defining occupational ability, the instruction directed the jury to consider a variety of factors in determining loss of future occupational ability.

The instruction for pain, discomfort and mental anguish provided that the jury award "[r]easonable compensation for pain, discomfort, and mental anguish suffered by the Plaintiff, and for such pain, discom-

fort, and mental anguish, if any, as you find he will suffer in the future." Under the instruction, the jury could either grant or deny an award for future pain, discomfort, and mental anguish.

The instruction for permanent disability provided:

"Reasonable compensation for permanent injuries or lasting impairment of health, that is, for the loss resulting from complete or partial disability in health, mind, or person. In determining whether there are permanent injuries or lasting impairment of health, you should consider the nature of the injuries or impairment of health, whether the ailment can be cured or relieved by proper medical treatment or care, and whether the ailment will subside or become worse. The measure of damages for permanent injuries or lasting impairment of health is compensation for the disabling effect of the injury, past or prospective. The destruction or impairment of any physical function is a proper element of damages."

Under this instruction, the jury was to determine "whether there are permanent injuries or lasting impairment of health" and thus could either grant or deny an award for permanent disability.

Nothing in these instructions or in the special verdict requires or directs the jury to find either pain, discomfort and mental anguish and/or permanent disability in order to find future loss of productive time. Under the law as submitted by the trial court, the jury was free to award damages under one category, without awarding damages under another. *See Wright v. Jackson,* 329 S.W.2d 560 (Ky.Ct.App.1959) (no reversible error where inconsistent verdict was result of instruction which led jury to believe it had the right to grant or deny an award under each item of damages).

The instructions are consistent with the general legal principle that future pain, discomfort and mental anguish, permanent disability and future loss of productive time are separate elements of damage which may be awarded independently of and in addition to, each other. *See* L.

Frumer and M. Friedman, Personal Injury, ¶ 3.04[5] at 290–91. *See, e.g., Dunn v. Ca-diente,* 503 N.E.2d 915 (Ind.Ct.App.1987); *Green v. Baldree,* 497 S.W.2d 342 (Tex.Civ. App.1973); *Caster v. Moeller,* 176 Neb. 30, 125 N.W.2d 89 (1963).

In addition, the jury was led to believe that it was entitled to grant or deny an award of damages. During deliberations, the jury submitted a question to the judge asking whether it had to fill out all of the blanks on the verdict relating to damages. The court responded that the jury was to fill only such blanks as reflected the jurors' damages. It is anomalous that a jury that follows the judge's instructions and fill out only those elements of damages it has found, is deemed to have reached an inconsistent verdict.

We conclude that the jury was entitled, under the law of the case, to award damages for future loss of productive time without awarding damages for future pain, discomfort and mental anguish and for permanent disability.

█ Reconciliation of the verdict also includes an examination of the evidence to determine whether the verdict is "logical and probable" and thus consistent, or whether it is "perverse and clearly contrary to the evidence." *See Massey–Ferguson, supra.* Grenz argues that under the evidence, the verdict for loss of future productive time, and nothing for future pain, discomfort, and mental anguish and for permanent disability is not "logical and probable." We disagree.

Given the evidence, the jury's finding that Grenz would suffer no future pain, discomfort, and mental anguish as a result of the accident is logical and probable and not clearly contrary to the evidence. Grenz testified that he had injuries before the accident which caused him pain, including back pain from breaking horses and working cattle, but had not seen a doctor for this back pain. He testified that prior to the accident he had seen a chiropractor for injury to his upper back. Grenz also testified that his legs caused him "a lot of pain" prior to the accident due to shrapnel wounds to his legs from the Viet Nam war.

Grenz testified that immediately following the accident, he believed that he had merely been bruised by the accident and when he subsequently felt pain in his leg, he attributed the pain to his previous injuries.

Both experts who examined Grenz determined that there was abnormal motion of the vertebra in Grenz' back, and they agreed that Grenz was born with this condition. The experts agreed that Grenz did not have a pinched nerve and had suffered no neurological loss. One expert concluded that Grenz had full range of motion in his back, no weakness or shrinkage of muscle, and no neurological deficit, and that one with Grenz' condition generally has a mild sprain that will heal itself in time. Neither expert recommended surgery to treat Grenz' condition, and one expert explained that the condition could be treated by lower back support, activity modification, and prescription medication.

Although one expert testified that pain commonly accompanied this type of back disorder, the expert explained that other factors, such as genetic predisposition, age degeneration and trauma, caused or contributed to the pain and injury. This expert acknowledged that Grenz' back condition was due to genetic predisposition and that Grenz' prior history of back pain verified that his condition was influenced by age degeneration.

█ The other expert, however, testified that it is common to have no symptoms or pain with his type of back condition, but later develop pain that is induced by lifting, stress or trauma. The jury, however, is not required to accept even undisputed testimony of experts. *Waletzko v. Herdegen,* 226 N.W.2d 648, 653 (N.D.1975).

Grenz also testified that after the accident, he got up, walked to the car to talk to Kelsch and then walked across the street to a bar. In the bar, Grenz had about four drinks while he talked to the Sheriff, the Chief of Police and waited for his wife to arrive. The jury's modest award of only $1,765.00 for past pain, discomfort and mental anguish reflects the jury's judgment about the degree of actual pain and

suffering Grenz experienced from the accident.

We conclude that the award of no damages for future pain, discomfort and mental anguish as a result of the accident is logical and probable and not clearly contrary to the evidence.

■ We also find that the award of no damages for permanent disability is logical and probable and not clearly contrary to the evidence. It is true that one expert stated that in his opinion Grenz was five percent permanently disabled. The other expert, however, did not testify that Grenz was permanently disabled. Further, the expert's opinion that Grenz was permanently disabled was based on Grenz' subjective complaints of pain and therefore subject to less credence. *See McCommon v. Hennings*, 283 N.W.2d 166, 169 (N.D.1979); *Belinskey v. Hansen*, 261 N.W.2d 390, 395 (N.D.1977). Again, the jury is not required to accept expert testimony. *Waletzko, supra.*

It is permissible for a jury to find that an injury will continue in the future without finding permanent disability. 22 Am. Jur.2d, *Damages*, § 166 (1988); *see Holte v. Carl Albers, Inc.*, 370 N.W.2d 520, 527 (N.D.1985) (jury could have reasonably concluded that plaintiff sustained long-term partial disability). So too, future loss of productive time may be partial and temporary. *See* Frumer and Friedman, *supra,* ¶ 3.04[4] at 188.

Under the evidence, it was logical and probable for the jury to find that Grenz would not suffer future pain, discomfort, and mental anguish as a result of the accident and that Grenz did not suffer permanent disability.

In view of the jury instructions and the evidence, the jury's verdict is reconcilable and the trial court erred in holding it was not.[1]

■ As an alternate basis for granting a new trial, the trial court also found that the evidence was insufficient to justify the damages. We will not disturb granting the motion for a new trial on appeal unless a manifest abuse of discretion is shown. *Nelson v. Trinity Medical Center*, 419 N.W.2d 886, 894 (N.D.1988); *Mauch v. Manufacturers Sales & Service, Inc.* 345 N.W.2d 338, 344 (N.D.1984). Although we give due deference to the trial court's margin of discretion in deciding a motion for new trial, *Okken v. Okken*, 325 N.W.2d 264, 270 (N.D.1982), the trial court does not act as a "thirteenth juror" and may not substitute its own judgment for that of the jury. *Nelson, supra; Regan Farmers Union Coop. v. Swenson*, 253 N.W.2d 327, 332 (N.D.1977). We require a stronger showing of abuse of discretion in order to reverse an order granting a new trial than we require to reverse an order denying a new trial. *Wall v. Pennsylvania Life Insurance Co.*, 274 N.W.2d 208, 219 (N.D. 1979); *Cook v. Stenslie*, 251 N.W.2d 393, 396 (N.D.1977).[2]

1. The trial court rejected Kelsch's explanation that there was no award for permanent disability because the jury found that Grenz had recovered from his injuries, but yet awarded damages for future loss of productive time because they decided that Grenz will lose money in the future and will be set back in his economic pursuits. We need not decide whether the jury may have considered this theory because apparent inconsistencies in the verdict need only be reconciled by a fair reading of the evidence and instructions and not under all possible theories of reconciliation. *See* 5A Moore's Federal Practice, ¶ 49.03[4] (1987).

2. Kelsch urges this court to adopt a standard of review requiring "close scrutiny" for orders granting a new trial on the grounds the verdict is contrary to the weight of evidence than for orders granting a new trial on other grounds, as set forth in *Lind v. Schenley Industries, Inc.*, 278 F.2d 79, 90 (3 Cir.1960), *cert. denied* 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960). Under this standard, when a trial court has ordered a new trial because of legal error, the appellate court should be more inclined to affirm. This standard is followed by many federal courts. *See, e.g., Foster v. Continental Can Corp.*, 101 F.R.D. 710, 712 (N.D.Ind.1984); *Williams v. City of Valdosta*, 689 F.2d 964, 974 (11 Cir.1982); *Vander Zee v. Karabatsos*, 589 F.2d 723, 729 (D.C.Cir.1978); *Borras v. Sea–Land Service, Inc.*, 586 F.2d 881, 887 (1 Cir.1978); *O'Neil v. W. R. Grace & Co.*, 410 F.2d 908, 914 (5 Cir.1969). Several state courts have also considered the *Lind* standard. *See, e.g., Wangen v. Knudson*, 428 N.W.2d 242 (S.D.1988); *Hilbert v. Katz*, 309 Pa.Super. 466, 455 A.2d 704 (1983); *Sheets v. Agro–West, Inc.*, 104 Idaho 880, 664 P.2d 787 (Ct.App.1983); *Smith v. Union Oil Co.*, 241 Cal.

The trial court did not explain its bare finding that the evidence was insufficient to justify the damages. Instead, its analysis was directed exclusively to the apparently inconsistent verdict. We believe that the trial court's assessment of the sufficiency of the evidence was clouded by its misconception that there was an inconsistent verdict. Under these circumstances, we conclude that the trial court manifestly abused its discretion in granting the motion for a new trial based on the insufficiency of the evidence.

Accordingly, we reverse the district court's order for a new trial and reinstate the jury's verdict.

ERICKSTAD, C.J., and MESCHKE, GIERKE and VANDE WALLE, JJ., concur.

MESCHKE, Justice, concurring.

I write separately only to footnote the shape of our finality doctrine for appeals.

In *Gast Construction Co. v. Brighton Partnership,* 422 N.W.2d 389 (N.D.1988), we tried to bring coherence to our concept of finality for appellate review. We structured a yardstick for gauging finality when reviewing orders other than judgments final in fact:

> "First, the order appealed from must meet one of the statutory criteria of appealability set forth in NDCC § 28–27–02. If it does not, our inquiry need go no further and the appeal must be dismissed. *Gillan v. Saffell, supra.* [395 N.W.2d 148 (N.D.1986]. If it does, then Rule 54(b), NDRCivP, must be complied with. *E.g., Production Credit Ass'n of Grafton v. Porter,* 390 N.W.2d 50 (N.D.1986). If it is not, we are without jurisdiction. *Ibid.*" 422 N.W.2d at 390.

Since *Gast,* we have used that gauge as a bright and certain measure of finality. *Matter of Estate of Stuckle,* 427 N.W.2d 96, 101 (N.D.1988); *Regstad v. Steffes,* 433 N.W.2d 202 (N.D.1988); *Sargent County*

App.2d 338, 50 Cal.Rptr. 499 (1966). Because of our disposition of this case, we need not address

*Bank v. Wentworth,* 434 N.W.2d 562; and *Jerry Harmon Motors, Inc. v. 1st National Bank & Trust Co.,* 436 N.W.2d 240 (N.D.1989). Even when no one has questioned reviewability, we have done so on our own initiative.

Several times, while concurring in those rulings, I have questioned the wisdom of extending our new formula for finality to orders which grant or deny injunctive relief, traditionally reviewable without finality. Today, I wonder about the hesitancy to extend the use of our recent formulation to this order, obviously non-final, although the issue was not raised by the parties.

An order granting a new trial is not final in fact, although in the past it has been held reviewable under NDCC 28–27–02(6). *Boulger v. Northern Pac. Ry.,* 41 N.D. 316, 171 N.W. 632 (1918). *Compare Anderson v. Bothum,* 45 N.W.2d 488 (N.D. 1950). However, if we followed the finality gauge given in *Gast* and its sequels, we would deem this order for a new trial interlocutory and non-final, and we would decline to review it until the trial court entered a final judgment or a Rule 54(b) certification.

Elsewhere, an order granting a new trial is generally considered interlocutory, non-final and therefore non-reviewable. 4 Am. Jur.2d *Appeal and Error* §§ 123 and 124 (1962). That is true in the federal practice on which we modeled our present repository of the finality principle, NDRCivP 54(b). *See* 15 Wright, Miller & Cooper, Federal Practice and Procedure: Trial and Post–Trial Orders § 3915 (1976); *United States v. Hitchmon,* 602 F.2d 689 (5 Cir.1979).

When this court chooses not to address this problem today, even though aware of it, some might think that it demonstrates continuing incoherence, incompleteness, or inconsistency in our finality jurisprudence. It may. I prefer to think of it as an invitation to appellate counsel to anticipate the potential of an appropriate motion in another appeal to put the issue precisely before us. In that way, the merits and

this issue.

demerits of carrying out our current concept of finality can be fully explored and developed after careful briefing and argument.