Linda BINSTOCK, Plaintiff
and Appellee,

v.

FORT YATES PUBLIC SCHOOL DIS-
TRICT NO. 4, Defendant
and Appellant,

and

Larry Huckins, individually and in his
former capacity as Superintendent of
Fort Yates Public School District No. 4,
Defendant.

Civ. No. 900160.

Supreme Court of North Dakota.

Nov. 29, 1990.

Dean F. Bard, Bismarck, for defendant
and appellant.

Michael Geiermann of Chapman and
Chapman, Bismarck, for plaintiff and ap-
pellee.

William D. Schmidt (appearance) of
Wheeler Wolf, Bismarck, for defendant.

VANDE WALLE, Justice.

Fort Yates Public School District No. 4
(Fort Yates) appealed from judgment on a
jury verdict finding it liable to Linda Bin-
stock for personal injuries received in an
altercation with Larry Huckins at the Fort
Yates Public School. Binstock has made a
motion to dismiss the appeal. We deny the
motion to dismiss the appeal, reverse the
judgment and remand the case for a new
trial on liability only.

At the time of the altercation Binstock was a teacher at Fort Yates and Huckins was the school's superintendent. On the morning of April 1, 1985, Huckins approached Binstock in the school's hallway prior to her first-period class. Huckins was angry with Binstock apparently because she was late getting to the classroom and, according to Huckins, had a history of tardiness.

The exact nature of the ensuing altercation was disputed by the parties. According to Huckins, he touched Binstock's shoulder and attempted to direct her into an office area, away from students in the hallway. Binstock described the touch as being a push. Huckins testified that Binstock then began to scratch at his face, an action denied by Binstock. Huckins then grasped Binstock in a "bear hug" and carried her down the hallway into an office area. The parties were apparently struggling in this office area when Huckins grabbed Binstock and carried her over his shoulder into the adjacent teacher's lounge where he deposited her on a couch. According to Binstock, Huckins then jumped on top of her and pressed his hands into her neck. Huckins testified that he was trying to get away from Binstock but couldn't because she had hold of his lapels. The altercation ended when another teacher entered the lounge.

Binstock sued Huckins for damages resulting from the altercation and sought to attach liability to Fort Yates under section 32–12.1–03, NDCC.[1] The jury awarded Binstock $40,000 compensatory damages and $15,000 exemplary damages. The trial court entered judgment against Fort Yates on the jury verdict but subsequently amended the judgment to dismiss the award of exemplary damages. It also entered judgment determining Huckins was not liable for damages.

Fort Yates appealed the amended judgment and the trial court's order denying its alternative motions for judgment notwithstanding the verdict or for a new trial.

Subsequent to oral argument, Binstock made a motion to dismiss the appeal. The issue raised by Binstock in her motion is whether the appeal brought by Fort Yates can be dismissed because it failed to name Huckins, an indispensable party, as an appellee. Huckins was adjudged to have no personal liability. He did not submit a brief to this Court nor participate in oral argument. Binstock contends that a reversal or modification of the judgment by this Court may affect both herself and Huckins. Binstock concludes that this Court cannot issue a decision affecting the interests of Huckins if he has not been made a party to the appeal.

Rule 3, NDRAppP, describes the proper procedure for taking an appeal from a trial court to this Court. Rule 3 provides, in part:

"(a) Filing the notice of appeal. An appeal permitted by law as of right from a trial court to the supreme court shall be taken by filing a notice of appeal with the clerk of the trial court within the time allowed by Rule 4.

.        .        .        .        .

"(c) Content of the notice of appeal. The notice of appeal shall specify the party or parties taking the appeal; shall

---

1. Section 32–12.1–03, NDCC, provides, in part:

"1. Each political subdivision shall be liable for money damages for injuries when the injuries are proximately caused by the negligence or wrongful act or omission of any employee acting within the scope of the employee's employment or office under circumstances where the employee would be personally liable to a claimant in accordance with the laws of this state, or injury caused from some condition or use of tangible property, real or personal, under circumstances where the political subdivision, if a private person, would be liable to the claimant.

"2. The liability of political subdivisions under this chapter is limited to a total of two hundred fifty thousand dollars per person and five hundred thousand dollars for injury to three or more persons during any single occurrence regardless of the number of political subdivisions, or employees of such political subdivisions, which are involved in that occurrence. In no event may a political subdivision be held liable, or be ordered to indemnify an employee held liable, for punitive or exemplary damages."

It was not disputed that Fort Yates Public School District No. 4 was a political subdivision as defined in section 32–12.1–02(5).

designate the judgment, order, or part thereof appealed from; and shall name the court to which the appeal is taken.

"(d) Service of the notice of appeal. The clerk of the trial court shall cause a copy of the notice of appeal to be mailed to the clerk of the supreme court and to counsel of record for each party other than the appellant, or, if a party is not represented by counsel, to the party's last known address."

Fort Yates fully complied with the requirements of Rule 3, NDRAppP. Fort Yates timely filed a notice of appeal. That appeal named Fort Yates as the party appealing; described the judgment and orders appealed from; and named this Court as the court to which the appeal was taken. Rule 3 does not require Fort Yates to specifically name the appellees.

While the appellants are not required to specifically name the appellees, failure to serve notice of appeal to parties whose interests may be affected may affect the disposition of the appeal. *See Mees v. Ereth,* 462 N.W.2d 161 (N.D.1990). Fort Yates satisfied the notice requirements of Rule 3(d) by serving copies of the notice of appeal on the counsel of record for both Binstock and Huckins.[2] The motion for dismissal of appeal is denied and we proceed to the merits.

■ Fort Yates contends that the trial court erred in denying its motion for a new trial based on an inconsistent jury verdict. The jury returned special findings on a verdict form provided by the trial court.[3] The jury found that Huckins unjustifiably assaulted Binstock and that his conduct was within the scope of his employment but did not amount to willful misconduct. Fort Yates asserts that these findings are inconsistent and illogical and should be set aside. We agree.

Special verdicts will only be set aside if perverse and clearly contrary to the evidence. *Grenz v. Kelsch,* 436 N.W.2d 552 (N.D.1989). When reconciling apparent conflicts between the answers of the jury, the test to be applied is:

"Whether the answers may fairly be said to represent a *logical and probable decision* on the relevant issues as submitted. If after a review of the district court's judgment no reconciliation is possible and the inconsistency is such that the special verdict will not support the judg-

**2.** Huckins's determination not to participate in the appeal was apparently the result of communication between Fort Yates and Huckins. Fort Yates informed Huckins it would not be responsible for his attorney fees on appeal because he was not liable for damages pursuant to the amended judgment. *See* NDCC § 32–12.1–04(1). That determination does not change the parties to the appeal nor does it govern the relief required on appeal. *See* Rule 35(b), NDRAppP ["Upon an appeal ... the supreme court may reverse, affirm, or modify the judgment or order as to any and all of the parties, and if necessary or proper may order a new trial of the entire cause or some specific issue or issues...."].

**3.** The special findings of the jury were as follows:

"*LIABILITIES*

"1. Do you find by the greater weight of the evidence that Ms. Binstock was assaulted by Mr. Huckins?

Yes X   No___

(If yes, answer Question 2; if no, sign and return this verdict form.)

"2. Do you find by the greater weight of the evidence that Mr. Huckins' conduct was justified?

Yes___   No X

(If yes, sign and return this verdict form; if no, answer Question 3.)

"3. Do you find by clear and convincing evidence that Mr. Huckins' conduct was

(a) outside the scope of his employment?

Yes___   No X

(b) willful misconduct?

Yes___   No X

(Answer Question 4.)

"*DAMAGES*

"4. What damages to the plaintiff do you find to have been proven by the greater weight of the evidence?

$ 40,000

(Answer Question 5.)

"5. Do you find by clear and convincing evidence that Mr. Huckins' conduct was malicious?

Yes X   No___

(If yes, answer Question 6; if no, sign and return this verdict form.)

"6. What, if any, exemplary damages do you award to Ms. Binstock?

$ 15,000

ment entered below or any other judgment, then the judgment must be reversed and the case remanded for a new trial. (Citation omitted.)" (Emphasis in original.) *Id.* at 553 [quoting 5A Moore's Federal Practice ¶ 49.03[4], at 49–29 to 32 (1987)].

The jury was instructed that a person had committed an assault if "he *willfully* causes bodily restraint or harm to another human being or places another human being in immediate apprehension of bodily restraint or harm" [emphasis added]. The jury was further instructed that the act of force must have been used unlawfully in order to consider it an assault. According to the instructions, whether the act was unlawful depended on whether the jury found that the act was unjustified. The jury found the act to be unjustified.

The jury was also instructed to determine whether Huckins's actions amounted to willful misconduct. Binstock correctly points out that the jury could have found willful misconduct if it found that Huckins intentionally did that which should not be done. Binstock argues that Huckins intended to speak to her about her tardiness, not to "beat her up." Thus, Binstock argues, the jury could correctly find that an assault took place but that the actions did not amount to willful misconduct.

Binstock's argument is flawed. A central issue in an assault action is the intent to do an act, not the intent to injure. *Brown v. State Auto. & Casualty Underwriters*, 293 N.W.2d 822 (Minn.1980). If a person willfully causes bodily restraint or harm to another human being unlawfully, that person has intentionally done that which should not be done. An unjustified assault is willful misconduct as a matter of law. Binstock's argument is further weakened in light of the finding that Huckins's conduct was malicious.[4] The answers of

the jury do not represent a logical and probable decision on the relevant issues.

Binstock argues that this case does not depend on whether assault is willful misconduct as a matter of law because the jury was properly instructed on the burdens of proof. The jury was instructed that the plaintiff has the burden of proving an assault by the greater weight of the evidence. The jury was further instructed that proof of willful misconduct must be by clear and convincing evidence. Binstock asserts that, given the instructions, the jury could logically find that the burden of proof for assault had been met but that the burden of proof for willful misconduct had not been met.

The burden-of-proof instruction for willful misconduct was derived from section 32–12.1–04(3), NDCC, which provides, in part:

"The plaintiff in such an action bears the burden of proof to show by clear and convincing evidence that the employee was ... acting within the scope of employment in a ... willful ... manner."

This statute establishes the evidentiary standard required to prove the mens rea of the employee, not the evidentiary standard required to prove the propriety of his conduct. This statute does not establish the burden of proving whether or not the conduct was proper or justifiable because the jury was instructed, without objection, that "[i]f an assault by Mr. Huckins has been proven and the defense of justification is made by Mr. Huckins, the burden is upon him to prove justification as defined in this instruction." Huckins testified that it was his intention to remove Binstock from the hallway, and that he did so by putting her in a "bear hug" and "scooting" her into the office. The evidence heard by the jury clearly and convincingly proves that the

---

**4.** The jury instruction on malice was as follows: "The terms 'malice' and 'maliciously' import a wish to vex, annoy, or injure another person, or an intent to commit a wrongful act, established either by proof or presumption of law. Malice may consist of (1) a direct intention to injure another or (2) a reckless disregard of another's rights and the consequences that may result. Malice is not limited to a spiteful, malignant, or revengeful disposition and intent; it includes wrongful and improper motives as well as intent to commit a wrongful and improper act. If a wrongful or unlawful act is willfully or deliberately committed, the law presumes that the act was committed with unlawful intent."

actions of Huckins were intentional. The jury could not logically find otherwise.

The special verdict of the jury will not support any judgment. If the jury correctly found that Huckins unjustifiably assaulted Binstock, his actions would constitute willful misconduct as a matter of law. If the jury correctly found that the actions of Huckins did not amount to willful misconduct, he could not have unjustifiably assaulted Binstock nor could his conduct have been malicious, as the jury found. Because the special verdict will not support the judgment, we reverse the judgment and remand for a new trial on the issue of liability.

■ At oral argument, we asked the parties to submit a supplemental brief on the issue of whether or not a political subdivision and its employee could be held jointly liable for injuries caused by the employee. At trial, the jury was instructed that our law does not permit a finding that Fort Yates and Huckins were jointly liable. This instruction was erroneous and may have contributed to the confusion which resulted in the inconsistent jury verdict. In order to avoid the same confusion at the new trial, it is necessary to discuss the issue of joint liability at this time.

The trial court based the erroneous jury instruction on section 32–12.1–04, NDCC, which provides, in part:

"1. An action for injuries proximately caused by the alleged negligence, wrongful act, or omission of an employee of a political subdivision occurring within the scope of the employee's employment or office shall be brought against the political subdivision. If there is any question concerning whether the alleged negligence, wrongful act, or omission occurred within the scope of employment or office of the employee, the employee may be named as a party to the action and the issue may be tried separately. A political subdivision must defend the employee until the court determines the employee was acting outside the scope of the employee's employment or office.

"2. An employee shall not be personally liable for money damages for injuries when the injuries are proximately caused by the negligence, wrongful act, or omission of the employee acting within the scope of the employee's employment or office.

"3. No employee may be held liable in the employee's personal capacity for acts or omissions of the employee occurring within the scope of the employee's employment unless the acts or omissions constitute reckless or grossly negligent conduct, or willful or wanton misconduct. An employee may be personally liable for money damages for injuries when the injuries are proximately caused by the negligence, wrongful act, or omission of the employee acting outside the scope of the employee's employment or office."

Under section 32–12.1–04, NDCC, an employee may be held personally liable for money damages for injuries caused by the actions of that employee when acting outside the scope of his employment, or for injuries caused by the actions of that employee when acting within the scope of his employment in a reckless or grossly negligent manner, or a willful or wanton manner. Under section 32–12.1–03, NDCC, a political subdivision may be held liable for money damages for injuries caused by the negligence or wrongful act or omission of an employee acting within the scope of his employment under circumstances where the employee would be personally liable. Chapter 32–12.1 does not expressly address limitations on joint liability.

■ In *Kitto v. Minot Park District*, 224 N.W.2d 795 (N.D.1975), this Court abolished the doctrine of governmental immunity of political subdivisions (as opposed to the sovereign immunity of the State) after determining the doctrine had a judicial basis and was not mandated by our State Constitution. Chapter 32–12.1, NDCC, was enacted to limit the liability of political subdivisions in the wake of our decision in *Kitto*. *O'Fallon v. Pollard*, 427 N.W.2d 809 (N.D.1988). While the Legislature imposed some limitations on the liability of political subdivisions, it did not abrogate the long-standing doctrine of respondeat superior. As a general rule, entities are

liable for torts committed by their agents while acting within the scope of their employment. *Rickbeil v. Grafton Deaconess Hospital,* 23 N.W.2d 247 (N.D.1946); *see also Fargo Women's Health Organization v. Larson,* 391 N.W.2d 627 (N.D.1986) [a corporation is liable for the acts of its employees if done on the corporation's behalf and within the scope of the employee's authority].

Although chapter 32–12.1, NDCC, immunizes employees from their ordinary negligence while acting within the scope of their employment [NDCC § 32–12.1–03(2) ] it does not negate the liability of political subdivisions for injuries caused by employees acting within the scope of their employment, whether or not such acts are those of ordinary negligence or reckless or grossly negligent conduct, or willful or wanton misconduct. The political subdivision remains liable under the doctrine of respondeat superior for all acts of its employees performed within the scope of employment to the maximum amount specified in section 32–12.1–03(2), NDCC. Because chapter 32–12.1 does not immunize employees from their reckless, grossly negligent, willful, or wanton misconduct, a political subdivision and its employee may be jointly liable if an employee caused injury while acting within the scope of his employment in a reckless or grossly negligent manner or a willful or wanton manner. The jury instructions given in the new trial on the issue of liability should be consistent with the above discussion of joint liability.

█ Fort Yates argues that the issue of damages should be retried as well. Fort Yates asserts that the amount of damages was against the weight of the evidence. We disagree.

█ Before this Court will interfere with the jury's damage verdict on appeal, it must be so excessive as to be without support in the evidence. *Stoner v. Nash Finch, Inc.,* 446 N.W.2d 747 (N.D.1989);

*Hoerr v. Northfield Foundry and Mach. Co.,* 376 N.W.2d 323 (N.D.1985). When determining compensatory damages, a jury may properly consider wounded feelings, mental suffering, humiliation, degradation, and disgrace. *Stoner v. Nash Finch, Inc., supra; Dahlen v. Landis,* 314 N.W.2d 63 (N.D.1981). The ascertainment of damages depends upon the good sense and practical judgment of the jury. *Stoner v. Nash Finch, Inc., supra.*

Fort Yates argues that the jury was unreasonable in awarding Binstock $40,000 compensatory damages after Binstock testified that her total out-of-pocket medical expenses were $18.50. Binstock also testified, however, that as a result of the altercation she had trouble sleeping, was emotionally upset and nervous, and at the time of trial was still suffering from periods of agitation. Binstock's husband, Theodore Binstock, corroborated her testimony, stating that at one point she was on the verge of emotional collapse. There is sufficient evidence to support the jury's verdict of damages. Therefore, it is not necessary to retry the issue of damages.

Binstock's judgment against Fort Yates is reversed and remanded for a retrial of the claims against the defendants Fort Yates and Huckins for the purpose of establishing liability. If either or both Fort Yates and Huckins are found liable, the amount of compensatory damages established by the jury at the initial trial will be the total amount of compensatory damages awarded.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.